IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL ANTHONY SYMITCZEK,

                      Plaintiff,                    OPINION AND ORDER

  v.
                                                15-cv-585-wmc

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                      Defendant.

---

      Under 42 U.S.C. § 405(g), plaintiff Michael Anthony Symitczek seeks judicial review of a denial of his application for disability insurance benefits by the Commissioner of Social Security. Before the court is plaintiff's motion for summary judgment contending that the Administrative Law Judge ("ALJ") erred by: (1) failing to give controlling weight to a treating physician opinion without providing satisfactory justification; (2) failing to adequately explain the reasons for finding that Symitczek's impairments did not meet or equal a listed impairment; and (3) discounting Symitczek's credibility by ignoring medical evidence supporting a finding of disability. (Dkt. #8.) Because the court agrees with plaintiff that remand is required for further assessment of his treating physician's opinion, the Commissioner's decision will be reversed and remanded.

## BACKGROUND[1]

### A. Claimant

Symitczek was born on December 18, 1964, making him 46 years old on his alleged disability onset date, September 1, 2011. (AR 21, 26.) He has at least a high school education, and his past relevant work as a "numerical control machine operator" and "machine set-up operator" was performed as skilled work at the medium level of exertion. (AR 26.) Symitczek claims that he is unable to work due to multiple impairments, including "a left knee replacement; right knee pain; back disc fusion; headaches; possible Potts syndrome; right knee injury from remote military duty; dizziness; nausea; sweating; light sensitivity; and adrenaline syndrome."[2] (AR 23.)

### B. Relevant Medical History

Beginning in 2011, plaintiff sought treatment and received multiple medications, including blood pressure and pain medicine, for his various medical conditions. Treatment notes from Dr. Christopher Petersen for a "pain contract" renewal visit, dated May 19, 2011, indicate Symitczek's reports of continued pain in his left knee following a recent

---

[1] The Administrative Record ("AR") is available at dkt. #7.

[2] In referencing "Potts syndrome," the parties and ALJ likely meant postural orthostatic tachycardia syndrome, also known as "POTS" or postural tachycardia syndrome, especially because the ALJ cited a form listing Symitczek's self-reported medical conditions limiting his ability to work, including "[p]robability of POTS." (AR 163.) POTS is a medical condition that causes changes in a person's heartrate when standing up, which can cause lightheadedness, rapid increase in heartbeat, chest pain, and fainting. Cleveland Clinic, Postural Orthostatic Tachycardia Syndrome (POTS), https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots (last visited Feb. 15, 2018).

surgery, as well as pain in his right knee and continued pain in his back after a lower lumbar fusion, although the latter "seem[ed] to be getting along quite well." (AR 265.) The following month, Dr. Petersen noted Symitczek's reports of having developed dizziness and nausea, both likely caused by hypertension, as well as increased back pain, accompanied by "a little tingling down the left leg." (AR 263.)

On September 13, 2011, Symitczek again visited Dr. Petersen with reports of recent symptoms he had experienced, including swelling of his left eye, facial numbness, dizziness, nausea and fatigue. (AR 237.) In his treatment notes from that same visit, Dr. Petersen remarked that Symitczek "has had a full and complete workup, including CT of the head recently, which was negative," and that he had referred Symitczek to the internal medicine department for an appointment. (*Id.*)

Internal medicine progress notes from Dr. Thomas Scott Cunningham for Symitczek's visit on September 19, 2011, include Symitczek's reports of having episodic spells involving "a sense of facial flushing or heat, [as well as] symptoms of nausea, with slightly preceding symptoms of dizziness and lightheadedness" that had been recurring nearly daily since June. (AR 290.) During that same visit, Symitczek also reported experiencing an episode of "bright flashing lights in his visual field with transient double vision, and then subsequent return of normal vision to his right eye but with the left eye having an episode of a very tunneled type effect with a small visual hole that lasted about 10 minutes." (*Id.*) In addition, he complained of increasingly frequent and severe headaches, as well as "intermittent confusion and difficulty with memory and general cognition." (AR 290, 292.)

Doubting that Symitczek's blood pressure problems were directly causing the symptoms that he was experiencing, Dr. Cunningham recommended additional testing to "exclud[e] a cardiac etiology to his spells," as well as neurological and visual examinations. (AR 293.) Accordingly, Cunningham referred Symitczek to Dr. Sankar Bandyopadhyay, who saw him for a neurology consultation on October 5, 2011.

Dr. Bandyopadhyay noted many of the same complaints that Symitczek made to Dr. Cunningham, and he developed an "extensive plan" for testing and follow-up. (AR 328-29, 331.) After a follow-up visit on April 9, 2012, Dr. Cunningham noted his own difficulty "find[ing] a specific cause for many of [Symitczek's] symptoms[,] particularly the profound fatigue, hot flashes and sweats and other explanations for his headaches," advised Symitczek that he lacked any "explanation for his shortness of breath other than the usual etiologies particularly in the context of his chronic tobacco use." (AR 286.)

Another physician, Dr. Annette Faller, saw Symitczek for an internal medicine visit on October 16, 2012. Following that visit, Dr. Faller noted many of the same subjective, patternless "roller coaster" symptoms about which Symitczek had complained to other physicians, although this time including that he often wore sunglasses, including when in indoor locations with bright lights, because of headaches triggered by sensitivity to light. (AR 270.) In progress notes, Dr. Faller also remarked that "CT scans," "MRI scans," a "full evaluation" and "multiple studies" had been "unrevealing," concluding her notes with a recap of Symitczek's "fairly comprehensive workup." (*Id.*)

Dr. Faller saw Symitczek again on December 4, 2012. During that visit Symitczek reported largely unchanged symptoms, except for the addition of occasional numbness of

his left arm and left leg, as well as additional difficulty sleeping. (AR 525.) After a physical therapy visit six days later at the referral of Dr. Faller, Ralph Tyler, PT, noted that it was "unlikely" that Symitczek's symptoms could be explained by "vestibular hypofunction."[3] (AR 617.)

Dr. Faller saw Symitczek for another visit on December 21, 2012. She noted his continued complaints of dizziness, nausea, headaches with light sensitivity and problems with his concentration and short-term memory. (AR 521.) Dr. Faller also noted his complaints of "generalized pain" and weakness, including "aching all over in his hands, his knees and his left shoulder to the point where it is difficult to even lift a cup of coffee up to his mouth," which he attributed to possible Lyme disease. (*Id.*) At another visit with Dr. Faller on March 12, 2013, Symitczek complained of having worsening headaches and joint pain among other symptoms, including episodes of "blank[ing] out" and difficulty sleeping. (AR 506-07.) Several months later, after a visit on November 19, 2013, Dr. Faller's progress notes reflected continuing complaints of "spells" and pain with activity. (AR 668.) Dr. Faller also noted informing Symitczek that several of his symptoms, including dizziness, hot flashes and sweating, may be related to him taking oxycodone for pain, although he was reluctant to decrease his dosage, since he felt that his pain was "barely controlled" as it was. (AR 670.)

---

[3] The vestibular system is responsible for balance. *See* The Merck Manual of Medical Information 1244 (Mark H. Beers, et al. eds., 2d ed. 2003).

## C. ALJ's Decision

ALJ Christopher Inama held a hearing by videoconference on February 6, 2014 (AR 19), and in an opinion dated May 7, 2014, concluded that Symitczek was not disabled for purposes of receiving Social Security disability benefits. (AR 27.) The ALJ found that Symitczek had several severe impairments: "degenerative disc disease, status-post fusion at L5-S1, with hardware, in 2010; history of total left knee replacement in 2008; and migraine headaches." (AR 21.) Because Symitczek's obesity (he reported weighing 260 pounds at a height of 5'10") and other medical conditions were manageable or caused insignificant functional limitations, the ALJ found those impairments were non-severe. (AR 21-22.) In addition, the ALJ concluded that none of Symitczek's impairments met or medically equaled the severity of one of the listed impairments. (AR 22.)

Consistent with those findings, the ALJ next determined that Symitczek had the residual functional capacity ("RFC")

> to perform light work, as defined in 20 CFR 404.1567(b), except that he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk 6 hours in an 8-hour workday and can sit 6 hours in an 8-hour workday, with normal breaks. He can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds, and can occasionally balance and stoop, but never kneel, crouch, and crawl. The claimant can use his bilateral upper extremities occasionally to reach overhead and below his waist/desk level, and he has no other manipulative limits. He must avoid concentrated exposure to extreme heat and cold and to fumes, odors, dusts, gases, poor ventilation, and pulmonary irritants. The claimant must avoid moderate exposure to hazards, such as unprotected heights and dangerous machinery, and he must wear sunglasses, due to photophobia.

(AR 22.)

6

In reaching this RFC, the ALJ relied primarily on the findings of the state agency consultants, Pat Chan, M.D., and Syd Foster, D.O., giving "great weight" to their conclusions that Symitczek "was not precluded from performing light work despite having a history of back and left knee surgeries." (AR 25.) More specifically, the ALJ credited their determinations that Symitczek was able to

> lift and carry 20 pounds occasionally and 10 pounds frequently; sit and stand/walk, each, 6 hours in an 8-hour workday, with occasional postural activities, avoidance of concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and avoidance of even moderate exposure to hazards, such as unprotected heights and dangerous machinery.

(AR 26.)

In contrast, the ALJ gave "little weight" to the opinions of Symitczek's treating physicians. He offered the following explanation for doing so:

> Here, the claimant's record includes physician statements of continued disability for the purposes of receiving an insurance benefit from the Hartford Life Insurance Company, along with medical release forms, which assert the claimant had a less-than-sedentary exertional capacity. I have read these disability statements and give them little weight, as they are based on criteria other than those used in determining disability for Social Security benefits.
>
> In addition, as discussed above, the claimant's treating physicians determined his many symptoms, including dizziness and fatigue, were of unclear etiology, after a variety of diagnostic tests were negative. Moreover, a treatment record dated November 21, 2013, by Annette Faller, M.D., a primary care physician, reported the claimant's dizziness, hot flashes, and sweating were likely related to his use of Oxycodone for chronic pain and that he was opioid dependent. His opioid use was probably causing many of the symptoms he experienced, so he was encouraged to reduce his opioid use.

7

(AR 25 (citations omitted).)

As a result of this weighing of the medical experts' opinions, as well as his conclusion that Symitczek's credibility as to the severity of his symptoms was diminished because his "allegations are greater than expected in light of the objective evidence of record," the ALJ purported to arrive at Symitczek's RFC. Still, he found that Symitczek's reports of symptoms were partially credible, which (along with treatment records) were enough to support the need for additional limitations in the form of manipulative restrictions and a requirement that he wear sunglasses. (AR 25-26.) Finally, relying on the Vocational Expert's ("VE") testimony at the hearing, the ALJ found that Symitczek had the capability to work at reasonably available jobs regionally and nationally as an "information clerk," "bagger" and "mail clerk," and, therefore, he was not disabled. (AR 27.)

OPINION

Plaintiff advances three, independent reasons for remand: (1) the ALJ inadequately assessed his treating physician's opinion; (2) the ALJ's conclusion that his symptoms do not meet or equal a listing lacks sufficient support; and (3) the ALJ's assessment of Symitczek's credibility relied on cherry-picked evidence. For the reasons that follow, the court finds plaintiff's first argument is his strongest and, indeed, controlling here.

I. Treating Physician Opinion

Plaintiff primarily argues that the ALJ erred by providing an inadequate explanation for giving "little weight" to the "Attending Physician's Statement of Continued

Functionality" dated December 12, 2013, which was prepared by Dr. Faller for Hartford Insurance, Symitczek's provider of life insurance benefits. (AR 766-67.) In that statement, Dr. Faller indicated that Symitczek could sit for only four hours at a time and could stand or walk for less than an hour at a time, although she did not indicate how many total hours out of the day that Symitczek could do any of those things. (AR 767.) Dr. Faller also noted that Symitczek could (1) only frequently, or 34-67% of the time, lift or carry up to ten pounds or reach; and (2) only occasionally, or 1-33% of the time, finger or handle.[4] (AR 767.)

Plaintiff argues that the ALJ first erred by not affording controlling weight to Dr. Faller's opinion, which is required if a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1527(d)(2)). Alternatively, plaintiff argues that the ALJ erred by failing to give adequate reasons for determining that Dr. Faller's opinion was entitled to only little weight. "If an ALJ does not give a treating physician's opinion controlling

---

[4] Dr. Faller also indicated that Symitczek had no restrictions lifting 11-100 pounds, but the most reasonable inference to draw is that those markings were made in error in light of Dr. Faller's finding that Symitczek could lift 1-10 pounds on only a limited basis. (AR 767.) Indeed, a similar Hartford Insurance "Attending Physician's Statement of Continued Functionality" completed by Dr. Faller on January 23, 2013, arranges those elements in ascending order from "Never" to "No Restrictions" (AR 660), rather than in the descending order in which they are presented in the form from December 2013, which further suggests that the latter form was erroneously marked (AR 767). In any event, since remand is required based on Dr. Faller's findings as to the length of time that Symitczek could stand or sit during an eight-hour workday, the ALJ should have an opportunity to resolve any remaining ambiguity as to Dr. Faller's specific findings of Symitczek's residual ability to lift specified weights, reach or finger and handle, which, as to the first two, were already incorporated into the RFC by the ALJ, and as to the third, was downplayed by Symitczek himself at the hearing. (AR 73 ("Q: What about using your fingers [for] picking things up, any problems with that? A: Not any worse than I had before with my carpal tunnel, and that was years ago.")).

9

weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)); *see also Larson*, 615 F.3d at 751 (describing these as a "required checklist of factors").

Here, plaintiff argues that: (1) the ALJ failed to consider any of these factors; and (2) the principal reason he provided for discounting the treating physician opinions -- the differing standards of disability applied by Hartford Insurance and the Social Security Administration -- was not a "good reason." *See Larson*, 615 F.3d at 751 ("An ALJ who does not give controlling weight to the opinion of the claimant's treating physician must offer 'good reasons' for declining to do so." (citing 20 C.F.R. § 404.1527(d)(2))). Defendant responds that the ALJ's rejection of controlling weight to the treating physician opinions was appropriate for the two reasons he gave: (1) they were based on criteria for disability different than those applied by the Social Security Administration; and (2) Dr. Faller's findings were inconsistent with objective evidence in the medical record. In particular, the ALJ noted that a number of Symitczek's symptoms had unclear causes because of various, negative diagnostic tests and that some of his symptoms, including "dizziness, hot flashes, and sweating[,] were likely related to his use of Oxycodone for chronic pain[.]" (AR 25.)

Not only does defendant ignore the ALJ's failure to even mention the checklist factors, let alone address any of them explicitly, neither of the two reasons defendant offers for the ALJ affording Dr. Faller's opinion little weight hold up on examination. As an initial matter, the ALJ's "analysis" of the treating physician's opinions begins and ends with

the observation that they were unsupported by acceptable diagnostic techniques and inconsistent with substantial evidence. Of course, that is true of any as yet undiagnosed medical condition, but that does not make the symptoms that Drs. Cunningham, Bandyopadhyay and (ultimately) Faller credited and were attempting to treat. And in particular, that does not give license for the ALJ to essentially ignore the ultimate opinion of debilitating pain by the treating physician, especially when failing to even mention the standard required for rejecting the controlling weight to those opinions. *See Bjornson v. Astrue*, 671 F.3d 640, 648 (7th Cir. 2012); SSR 96-7p, 1996 WL 374186 ("An individual's statements about the intensity and persistence of pain . . . may not be disregarded solely because they are not substantiated by objective medical evidence.").

This facial error is further compounded by the ALJ's purported reasons for giving Dr. Faller's opinion little weight. First, the ALJ notes that Hartford Insurance uses different criteria for determining disability, but that is simply immaterial to weighing Dr. Faller's findings regarding Symitczek's *physical limitations*. Indeed, the restrictions found by Dr. Faller regarding Symitczek's capability to sit and stand during an eight-hour workday, or reach and handle, should have applied in the same way to the ALJ's formulation of Symitczek's RFC.

Second, even if the reasons the ALJ gave for discounting Symitczek's symptoms of dizziness, fatigue, hot flashes and sweating could possibly be sufficient to avoid remand based on those symptoms alone, the severe impairments that the ALJ actually found, including "degenerative disc disease, status-post fusion at L5-S1, with hardware, in 2010[ and] history of total left knee replacement in 2008," as well as his non-severe impairment

11

of obesity, are not similarly eroded by those same reasons. Moreover, those credited impairments *could* reasonably account for the physical limitations found by Dr. Faller. Indeed, these impairments alone would appear to support Dr. Faller's opinion as to Symitczek's capability to sit or stand during the workday since it is specifically supported by his "chronic pain" as a "primary diagnosis" in her assessment. Said another way, even discounted to the degree they were by the ALJ, Symitczek's other symptoms -- dizziness, fatigue, hot flashes and sweating -- appear only to bolster Dr. Faller's RFC assessment.

Finally, and related to the second reason, the ALJ's failure to provide reasons for discounting Symitczek's pain in his written decision is particularly significant in light of the consistent reports of pain to his treating physicians over a number of years, including multiple reports to Dr. Faller in the year leading up to her opinion regarding his limitations in December 2013. Ironically, although cited by the ALJ to discredit the need for additional limitations for some of Symitczek's symptoms, even his dependence on opioids to manage pain underscores the ALJ's need to assess in more detail the limitations that Dr. Faller opined could be reasonably caused by pain.[5]

For these reasons, the ALJ's explanation for giving only little weight to the opinions of Symitczek's treating physicians, including Dr. Faller's opinion dated December 12,

---

[5] The ALJ's failure to mention these reports of pain in Symitczek's treatment notes also raises the risk that, consciously or uncousciously, he selectively overlooked medical evidence supporting Dr. Faller's finding of disabling limitations, which is impermissible. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009))). As discussed in text above, this risk is heightened here given that an ALJ should exercise caution in discounting a claimant's statements regarding pain simply for lack of support from objective medical evidence.

2013, heighten rather than ameliorate the court's concern with his failure to follow 20 C.F.R. § 404.1527(d)(2).[6] Particularly given that Dr. Faller opined that Symitczek's chronic pain more severely restricted his ability to sit and stand than did the state agency consultants, whose opinions the ALJ afforded great weight, remand is required for the ALJ to analyze the weight afforded to the treating physician opinions.[7]

**II. Other Medical Listings**

Having already found that remand is required for the ALJ to provide an adequate assessment of the weight deserved by the treating physician opinions, the court only briefly addresses plaintiff's second and third challenges to the ALJ's decision to the extent it may be helpful to the parties or the ALJ on remand. As for the second challenge, plaintiff fails to show that remand is required based on the ALJ's finding that plaintiff's impairments did not meet or medically equal a listed impairment. In support of this argument, plaintiff asserts that he met Listing 1.02A, for dysfunction of a weight-bearing joint, in light of his need to use a cane, as well as his difficulty walking, because of his knees. Defendant points out, however, that to meet Listing 1.02A based on the use of canes, a claimant must use

---

[6] Defendant points out that Dr. Faller's restrictions as to the length of time that Symitczek can sit or stand do not indicate the total hours that he can do either during the workday, but defendant does not argue that any error in the ALJ's assessment of Dr. Faller's opinion is harmless in light of the ALJ's other findings or the VE's testimony. In addition, especially considering the likelihood that Dr. Faller intended to indicate that Symitczek was capable of no more than those periods of sitting or standing specified during the work day, the ALJ would have been well-served by supplementing the record with a clarification, and should do so on remand or better explain his reasons for not doing so.

[7] As noted by defendant, plaintiff's treating physician arguments focus solely on Dr. Faller's opinion dated December 12, 2013. On remand, however, the ALJ should provide appropriate reasons for discounting the other treating physician opinions, if they do not deserve controlling weight.

canes in both hands. (Def.'s Opp'n Br. (dkt. #10) at 10.) Defendant also identifies treatment notes that the ALJ mentioned in his written decision that suggest Symitczek could walk well enough such that Listing 1.02A was not met.

With respect to Listing 11.03, for non-convulsive epilepsy, which defendant points out is regarded as the most analogous for migraine headaches, defendant argues that the severity of the migraine symptoms reported by plaintiff (and noted by his treating physicians) pale in comparison to the example of migraine symptoms medically equaling Listing 11.03 provided in the Social Security Administration's program operations manual. (*Id.* at 12-13.) Defendant also responds persuasively that the ALJ's failure to discuss his analysis of the listings in more specific terms does not provide cause for remand. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (explaining that as long as the ALJ's assessment of the record in the decision as a whole provides more than a "superficial" or "perfunctory" analysis of the medical listings, the determination at step three may be upheld).

Plaintiff does not rebut defendant's arguments in his reply brief effectively, resorting instead to largely boilerplate arguments untethered to the ALJ's actual, written decision. Accordingly, plaintiff falls far short of demonstrating that the ALJ's determination at step three provides an independent basis for remand. That said, the ALJ is not precluded on remand from reconsidering the analysis at step three, including identifying specifically the relevant listings, should Symitczek not be found disabled in the first two steps.

### III. Credibility Determination

Finally, plaintiff argues that remand is required for reconsideration of the ALJ's credibility determination as to Symitczek's subjective reports of pain and other symptoms, asserting that the ALJ cherry-picked medical evidence supporting a finding of limited credibility from the record. As already discussed, the ALJ's failure to mention several treatment notes indicating that Symitczek was suffering from significant, chronic pain at least raises the specter of cherry-picking. The court need not resolve this dispute, however, since remand will necessarily require that plaintiff's credibility be reassessed as part of an adequate assessment of the treating physician opinions.

### ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 15th day of February, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Court Judge